UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

POWERDSINE, INC. and POWERDSINE, LTD.,

                       Plaintiffs,

-against-

AMI SEMICONDUCTOR, INC. and AMI
SEMICONDUCTOR BELGIUM BVBA,

                       Defendant.

Civil Action No. _____

JUN 2 5 2007

**COMPLAINT**

---

Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd. (collectively "PowerDsine" or "Plaintiffs"), by and through their undersigned attorneys, hereby complain of Defendants AMI Semiconductor, Inc. and AMI Semiconductor Belgium BVBA (collectively "AMIS") as follows:

### THE PARTIES

1.     PowerDsine, Inc., a wholly owned U.S. subsidiary of PowerDsine, Ltd., is a corporation organized under the laws of the State of New York with its principal place of business in Melville, New York. PowerDsine, Inc. assists its parent, PowerDsine, Ltd., in the design of integrated circuits, modules and systems that enable the implementation of Power-over-Ethernet ("PoE") in local area networks ("LANs") and sells and supplies such integrated circuits, modules and systems.

2.     PowerDsine, Ltd. is a corporation organized under the laws of Israel, with its principal place of business at 1 Hanagar Street, Hod Hasharon, Israel. PowerDsine, Ltd. designs and supplies integrated circuits, modules and systems that enable the implementation of PoE in LANs and sells some of its products in the U.S. and other countries through its U.S. subsidiary, PowerDsine, Inc.

3. Upon information and belief, Defendant AMI Semiconductor, Inc. is a corporation organized under the laws of Delaware, having its principal place of business located at 2300 Buckskin Road, Pocatello, Idaho.

4. Upon information and belief, Defendant AMI Semiconductor Belgium BVBA is a corporation organized under the laws of Belgium, having its principal place of business located at Westerring 15, B-9700 Oudenaarde, Belgium.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the matter in controversy exceeds the sum of $75,000.00, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

6. Venue is proper in this District pursuant to agreement by and amongst the parties.

## FACTUAL BACKGROUND

7. Plaintiffs market and sell industry leading components that provide, among other things, Power-over-Ethernet networks. Plaintiffs' customers regularly incorporate PowerDsine components into Ethernet network products sold on the open market. These components enable a system that incorporates these products to supply both data and electrical operating power over the same Ethernet network cable. Accordingly, networking equipment that uses Plaintiffs' products are able to provide operating electrical power to end-devices, such as phones, cameras and wireless access points so that there is no need to connect such end-devices to traditional electrical outlets. Plaintiffs have been in this business since 1994.

8. PowerDsine, Ltd. was the pioneer of PoE technology and was the driving force that will make PoE a part of almost all Ethernet networking switching equipment ("Power Sourcing Equipment").

9. PowerDsine derives more than ninety percent of its revenue from PoE products.

10. PowerDsine has been conducting research and development activities with respect to PoE technology for almost ten years.

11. PowerDsine has spent significant sums in excess of $50 million in business activities, including research and development, involving PoE.

12. The principal driving force behind PowerDsine's initial public offering in June 2004, where the company raised over $60 million was centered around PoE technology.

13. In order to maintain its competitive edge, PowerDsine maintains much of its proprietary information confidentially. Due to its innovative, confidential proprietary information, PowerDsine has become the technological leader in the Power-over-Ethernet Market.

14. By no later than March, 2004, PowerDsine had invented and developed an integrated circuit that would enable Power Sourcing Equipment to, *inter alia*, deliver power to end-devices over Ethernet cables (hereafter "Product") and, in connection therewith, PowerDsine possessed the specifications, circuitry and other information and files relating to the design, functionality, testing requirements and other information relating to the Product (hereafter "Product Information").

15. In or about March, 2004, AMIS was in the business of manufacturing and assembling products in the electronic industry.

16. Upon information and belief, prior to at least March, 2004, AMIS did not possess the technical information, knowledge or experience required to design or manufacture PoE products.

17. In or about March, 2004, PowerDsine and AMIS sought to explore and evaluate the possibility of establishing a business relationship pursuant to which PowerDsine would engage AMIS as a subcontractor to manufacture PoE products exclusively for PowerDsine.

18. In order to establish this business relationship, the parties realized that it would be desirable for PowerDsine and AMIS to disclose confidential and proprietary information to each other.

19. In or about March, 2004, PowerDsine and AMIS, in order to induce each other to disclose confidential and proprietary information, undertook certain obligations of confidentiality and non-disclosure.

20. PowerDsine and AMIS acknowledged that the confidential information to be disclosed to each other would constitute a trade secret of, and was proprietary to, its discloser and could be used only for the purposes of manufacturing products solely for PowerDsine.

21. In or about August, 2005, PowerDsine and AMIS realized that in order to further proceed toward investigating the possibility of establishing a business relationship, PowerDsine would have to provide additional, extremely sensitive confidential information to AMIS.

22. PowerDsine decided that because of the sensitive nature of such confidential information, it would disclose such information only if AMIS would agree not to compete with PowerDsine in the PoE field relating to products that are integrated into network switching equipment.

23. In order to receive such information, AMIS agreed not to compete with PowerDsine in the foregoing segment of the PoE market.

24. As a result of AMIS's agreement not to compete, PowerDsine disclosed to AMIS PowerDsine's confidential and proprietary information, including the unique design specifications and features of PoE integrated circuits designed and developed by PowerDsine, as well as valuable confidential information about PoE technology which were developed by PowerDsine over years of research and development efforts.

25. AMIS received and accepted this confidential PowerDsine information and even incorporated it into design documents bearing AMIS's insignia.

26. Upon information and belief, at some time after receiving PowerDsine's confidential and proprietary information, AMIS established a business relationship with Broadcom Corporation.

27. Broadcom Corporation ("Broadcom"), having a place of business at 5300 California Avenue Irvine, California 92617, is a company engaged in the highly competitive business of marketing and selling components that are incorporated into, among other things, data and voice networking equipment.

28. Upon information and belief, Broadcom has recently entered the business of selling Power-over-Ethernet components internationally, in direct competition with PowerDsine.

29. Upon information and belief, AMIS manufactures PoE components for Broadcom, which Broadcom then sells and/or offers for sale as Broadcom products.

30. Upon information and belief, AMIS designs and/or manufactures PoE products for Broadcom based on confidential and proprietary information that it received from PowerDsine.

31. Upon information and belief, certain Broadcom products, including but not limited to the BCM59101 Module, include certain unique design specifications and features that are based on information provided by PowerDsine to AMIS.

## CLAIM ONE:  BREACH OF CONTRACT

32. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

33. PowerDsine disclosed to AMIS valuable confidential and proprietary information, which took almost ten years for PowerDsine to develop.

34. AMIS agreed not to use or disclose this information or to develop and market PoE products based on confidential and proprietary information received from PowerDsine.

35. AMIS breached its agreement by violating an undertaking not to compete and by misappropriating PowerDsine's confidential information.

      36.    As a result of AMIS's breach, PowerDsine has suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd. demand judgment against Defendant as follows:

    A.    Imposing preliminary and permanent injunctions enjoining AMIS from (a) further breaching its agreement with PowerDsine; and (b) engaging in any manufacturing, sale or assembly arrangement with Broadcom and any other seller or supplier of PoE products;

    B.    Awarding PowerDsine compensatory damages against AMIS for breach of contract in an amount to be proven at trial of not less than $150 million;

    C.    Awarding Plaintiffs their reasonable attorneys' fees, costs and disbursements in this action; and

D.  Granting Plaintiffs such other and further relief that this Court may deem just and proper.

Dated:   June 25, 2007
         New York, New York

CHADBOURNE & PARKE LLP

By_____
    Walter G. Hanchuk (WH-7096)
    Dennis C. Hopkins (DH-3767)
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

PowerDsine, Inc.
    David Goren (DG-7760)
    General Counsel
290 Broadhollow Road, #305
Melville, NY  11747

*Attorneys for Plaintiffs*
PowerDsine, Inc.
PowerDsine, Ltd.