Brian S. Fraser
Jon Connolly
Richards Kibbe & Orbe LLP
One World Financial Center
New York, NY  10281-1003
Telephone:  212-530-1800
Telecopier:  212-530-1801

Michael A. Oblon (admitted *Pro Hac Vice*)
Donald Friedman (admitted *Pro Hac Vice*)
James M. Denaro (admitted *Pro Hac Vice*)
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, DC  20005
Telephone:  202-628-6600
Telecopier:  202-434-1690

Attorneys for Defendants/Counterclaim-Plaintiffs
AMI Semiconductor, Inc. and AMI Semiconductor Belgium BVBA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

POWERDSINE, INC. and POWERDSINE, LTD.,     :
                                                                          :
                                Plaintiffs,                        :          07 Civ. 6014 (SAS) (ECF)
                                                                          :
            v.                                                          :
AMI SEMICONDUCTOR, INC. and                          :
AMI SEMICONDUCTOR BELGIUM BVBA,         :          **ANSWER OF ALL DEFENDANTS**
                                                                          :          **TO FIRST AMENDED**
                                Defendants.                     :          **COMPLAINT, AND**
                                                                          :          **COUNTERCLAIMS OF AMI**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x          **SEMICONDUCTOR, INC. AND**
AMI SEMICONDUCTOR, INC. and                          :          **AMI SEMICONDUCTOR**
AMI SEMICONDUCTOR BELGIUM BVBA,         :          **BELGIUM BVBA**
                                                                          :
                                Counterclaim-Plaintiffs,    :
            v.                                                          :
POWERDSINE, INC. and POWERDSINE, LTD.,   :
                                                                          :
                                Counterclaim-Defendants.  :
            and                                                     :
MICROSEMI CORPORATION,                                 :
                                                                          :
                                Third-Party Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

1

Defendants AMI Semiconductor, Inc. and AMI Semiconductor Belgium BVBA (collectively, "AMIS" or "Defendants"), by and through their undersigned counsel, answer the First Amended Complaint of PowerDsine, Inc. and PowerDsine, Ltd. (collectively, "PowerDsine" or "Plaintiffs") as follows:

## THE PARTIES

1.    In response to paragraph 1 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

2.    In response to paragraph 2 of the First Amended Complaint, Defendants admit that, at least in 2005, PowerDsine, Ltd. maintained its principle place of business in Hod Hasharon, Israel, and that PowerDsine, Ltd. develops and sells Power-over-Ethernet products for managing electrical power over data network cables, but Defendants are otherwise without sufficient information to form a belief as to the truth of the remaining averments in the allegation set forth in the paragraph, and on that basis deny the same.

3.    In response to paragraph 3 of the First Amended Complaint, Defendants admit that AMI Semiconductor, Inc. is a corporation organized under the laws of Delaware, having its principal place of business located at 2300 Buckskin Road, Pocatello, Idaho.

4.    In response to paragraph 4 of the First Amended Complaint, Defendants admit that AMI Semiconductor Belgium BVBA is a corporation organized under the laws of Belgium, having its principal place of business located at Westerring 15, B-9700 Oudenaarde, Belgium.

2

## JURISDICTION AND VENUE

5.   On August 14, 2007, Plaintiffs filed a stipulation to dismiss the second claim of the First Amended Complaint without prejudice.  In response to paragraph 5 of the First Amended Complaint, with regard to the remaining first claim, Defendants deny that this Court has jurisdiction over this action.

6.   In response to paragraph 6 of the First Amended Complaint, Defendants do not contest venue, but otherwise deny the allegation set forth in the paragraph.

## FACTUAL BACKGROUND

7.   In response to paragraph 7 of the First Amended Complaint, Defendants admit that PowerDsine develops and sells Power-over-Ethernet products for managing electrical power over data network cables, but Defendants are otherwise without sufficient information to form a belief as to the truth of the remaining averments in the allegation set forth in the paragraph, and on that basis deny the same.

8.   In response to paragraph 8 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

9.   In response to paragraph 9 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

10. In response to paragraph 10 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

11. In response to paragraph 11 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

12. In response to paragraph 12 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

13. In response to paragraph 13 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation that, "in order to maintain its competitive edge, PowerDsine maintains much of its proprietary information confidentially," and on that basis denies the same. Defendants deny the averments set forth in the second sentence of paragraph 13.

14. In response to paragraph 14 of the First Amended Complaint, Defendants deny that, by March, 2004, PowerDsine had the capability sufficient to design, develop or manufacture integrated circuit hardware for its products. Defendants are without sufficient information to form a belief as to the truth of the remaining averments of the allegation set forth in the paragraph, and on that basis deny the same.

15. In response to paragraph 15 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein,

and on that basis deny the same.

16. In response to paragraph 16 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

17. In response to paragraph 17 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

18. In response to paragraph 18 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

19. In response to paragraph 19 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

20. In response to paragraph 20 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

21. In response to paragraph 21 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

22. In response to paragraph 22 of the First Amended Complaint, Defendants are

without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

23. In response to paragraph 23 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

24. In response to paragraph 24 of the First Amended Complaint, Defendants admit that AMI Semiconductor, Inc. and AMI Semiconductor Belgium BVBA in March, 2004 were, among other things, in the business of manufacturing and assembling products in the electronic industry, including customer-specific mixed-signal semiconductor products.

25. In response to paragraph 25 of the First Amended Complaint, Defendants admit that AMI Semiconductor, Inc. and AMI Semiconductor Belgium BVBA operate an integrated mixed signal products segment and a structured digital products segment, that the integrated mixed signal products segment uses the companies' wafer fabrication process technologies, and that the companies operate internal fabrication facilities, but the allegation that engineers in the integrated mixed signal product segment work "hand-in-hand" with engineers in internal fabrication facilities is vague and indefinite and is therefore denied.

26. In response to paragraph 26 of the First Amended Complaint, Defendants admit that AMI Semiconductor, Inc. and AMI Semiconductor Belgium BVBA operate internal fabrication facilities that support mixed signal analog technologies and that the companies' fabrication facilities could be operated for manufacture of application specific integrated circuits that could be utilized in a Power over Ethernet product.

27. In response to paragraph 27 of the First Amended Complaint, Defendants deny the allegation of paragraph 27 of the First Amended Complaint. Further to the response to paragraph 26 of the First Amended Complaint, prior to at least March, 2004, Defendants operated internal fabrication facilities that supported mixed signal analog technologies, which were capable of being operated for manufacture of application specific integrated circuits that could have been utilized in a Power over Ethernet product.

28. In response to paragraph 28, Defendants admit that in 2004, representatives of PowerDsine and AMIS entered discussions concerning the possibility of establishing a business relationship pursuant to which PowerDsine would engage AMIS, but Defendants otherwise deny the remaining averments in the allegation set forth in the paragraph.

29. In response to paragraph 29 of the First Amended Complaint, Defendants admit that in March, 2004, representatives of AMIS Semiconductor Belgium BVBA and PowerDsine, Ltd. executed a Non-Disclosure Agreement, but Defendants are without sufficient information to form a belief as to what PowerDsine "realized," as that term in this context is vague and indefinite, and on that basis otherwise deny the remaining averments in the allegation set forth in the paragraph.

30. In response to paragraph 30 of the First Amended Complaint, Defendants admit that in March, 2004, representatives of AMIS Semiconductor Belgium BVBA and PowerDsine, Ltd. executed a Non-Disclosure Agreement, but otherwise deny the remaining averments in the allegation set forth in the paragraph.

31. Defendants deny the allegation of paragraph 31 of the First Amended Complaint.

32. In response to paragraph 32 of the First Amended Complaint, Defendants admit that in 2005, representatives of AMIS Semiconductor Belgium BVBA and PowerDsine, Ltd. executed an Amendment to the 2004 Non-Disclosure Agreement, but otherwise deny the remaining averments in the allegation set forth in the paragraph.

33. In response to paragraph 33 of the First Amended Complaint, Defendants admit that in 2005, representatives of AMIS Semiconductor Belgium BVBA and PowerDsine, Ltd. executed an Amendment to the 2004 Non-Disclosure Agreement, but otherwise deny the remaining averments in the allegation in the paragraph.

34. In response to paragraph 32 of the First Amended Complaint, Defendants admit that in 2005, representatives of AMIS Semiconductor Belgium BVBA and PowerDsine, Ltd. executed an Amendment to the 2004 Non-Disclosure Agreement, by which AMIS Semiconductor Belgium BVBA agreed "not to develop and market a Power Sourcing Equipment Application Specific Standard Product for the power over Ethernet market based on the Confidential Information received from PowerDsine," but otherwise deny the averments in the allegation set forth in the paragraph.

35. Defendants deny the allegation of paragraph 35 of the First Amended Complaint.

36. Defendants deny the allegation of paragraph 36 of the First Amended Complaint.

37. Defendants deny the allegation of paragraph 37 of the First Amended Complaint.

38. Defendants deny the allegation of paragraph 38 of the First Amended Complaint.

39. In response to paragraph 39 of the First Amended Complaint, Defendants are

without sufficient information to form a belief as to the truth of the allegation set forth therein, particularly with regard to whether Broadcom Corporation's business activities are "highly competitive," and on that basis deny the same.

40. In response to paragraph 40 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

41. In response to paragraph 41 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

42. In response to paragraph 42 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

43. In response to paragraph 43 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

44. Defendants deny the allegation of paragraph 44 of the First Amended Complaint.

45. Defendants deny the allegation of paragraph 45 of the First Amended Complaint.

46. In response to paragraph 46 of the First Amended Complaint, Defendants deny that Mr. Elkayam ever provided PowerDsine's confidential and proprietary information to AMIS. Defendants are without sufficient information to form a belief as to the truth of the remaining

averments in the allegation set forth in paragraph 46, and on that basis deny the same.

47. In response to paragraph 47 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

48. Defendants deny the allegation of paragraph 48 of the First Amended Complaint.

49. Defendants deny the allegation of paragraph 49 of the First Amended Complaint.

50. Defendants deny the allegation of paragraph 50 of the First Amended Complaint.

51. Defendants deny the allegation of paragraph 51 of the First Amended Complaint.

52. In response to paragraph 52 of the First Amended Complaint, Defendants admit that Mr. Dagan was an employee of PowerDsine, Ltd., but otherwise deny the averments in the allegation set forth in the paragraph.

53. In response to paragraph 53 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

54. In response to paragraph 54 of the First Amended Complaint, Defendants admit that Mr. Dagan was an employee of PowerDsine, Ltd., but otherwise are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

55. In response to paragraph 55 of the First Amended Complaint, Defendants admit

that Mr. Dagan was an employee of PowerDsine, Ltd., but otherwise are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

56. In response to paragraph 56 of the First Amended Complaint, Defendants admit that Mr. Dagan was an employee of PowerDsine, Ltd., but otherwise are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

57. In response to paragraph 57 of the First Amended Complaint, Defendants admit that Mr. Dagan was an employee of PowerDsine, Ltd. and executed an employment agreement with PowerDsine, Ltd., but otherwise are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

58. In response to paragraph 58 of the First Amended Complaint, Defendants admit that Mr. Dagan was an employee of PowerDsine, Ltd. and executed an employment agreement with PowerDsine, Ltd., but are otherwise without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

59. Defendants deny the allegation of paragraph 59 of the First Amended Complaint.

60. Defendants deny the allegation of paragraph 60 of the First Amended Complaint.

61. In response to paragraph 61 of the First Amended Complaint, Defendants admit that Mr. Dagan was hired by AMI Semiconductor Belgium BVBA shortly after he left PowerDsine, Ltd.

62. Defendants deny the allegation of paragraph 62 of the First Amended Complaint.

63. In response to paragraph 63 of the First Amended Complaint, Defendants are without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

64. In response to paragraph 64 of the First Amended Complaint, Defendants admit that AMI Semiconductor, Inc. was selected as a design and technology partner for two new highly-integrated power sourcing equipment (PSE) controllers for use in Broadcom's Power over Ethernet (PoE) products, but are otherwise without sufficient information to form a belief as to the truth of the allegation set forth therein, and on that basis deny the same.

65. Defendants deny the allegation in paragraph 65 of the First Amended Complaint.

66. Defendants deny the allegation in paragraph 66 of the First Amended Complaint.

67. Defendants deny the allegation in paragraph 67 of the First Amended Complaint.

68. Defendants deny the allegation in paragraph 68 of the First Amended Complaint.

69. In response to paragraph 69 of the First Amended Complaint, Defendants admit that AMI Semiconductor, Inc. and AMI Semiconductor Belgium BVBA has included information in an investor presentation indicating that the Power-over-Ethernet integrated circuit market is capable of generating yearly revenue of $80 million.

70. Defendants deny the allegation in paragraph 70 of the First Amended Complaint.

71. Defendants deny the allegation in paragraph 71 of the First Amended Complaint.

**CLAIM ONE AGAINST AMIS:**
**<u>BREACH OF CONTRACT</u>**

72. Defendants reassert each response to Paragraphs 1-71 inclusive, and incorporate them herein by reference.

73. Defendants deny the allegation in paragraph 73 of the First Amended Complaint.

74. Defendants deny the allegation in paragraph 74 of the First Amended Complaint.

75. Defendants deny the allegation in paragraph 75 of the First Amended Complaint.

76. Defendants deny the allegation in paragraph 76 of the First Amended Complaint.

**CLAIM TWO AGAINST AMIS:**
**TORTIOUS INTERFERENCE WITH**
**CONTRACTUAL RELATIONSHIP WITH SHARON DAGAN**

77. On August 14, 2007, Plaintiffs filed a stipulation to dismiss the second claim of the First Amended Complaint without prejudice. In this stipulation, the parties agreed that Defendants are relieved of their obligation to respond to paragraph 77 of the First Amended Complaint.

78. On August 14, 2007, Plaintiffs filed a stipulation to dismiss the second claim of the First Amended Complaint without prejudice. In this stipulation, the parties agreed that Defendants are relieved of their obligation to respond to paragraph 78 of the First Amended Complaint.

79. On August 14, 2007, Plaintiffs filed a stipulation to dismiss the second claim of the First Amended Complaint without prejudice. In this stipulation, the parties agreed that Defendants are relieved of their obligation to respond to paragraph 79 of the First Amended

Complaint.

80. On August 14, 2007, Plaintiffs filed a stipulation to dismiss the second claim of the First Amended Complaint without prejudice.  In this stipulation, the parties agreed that Defendants are relieved of their obligation to respond to paragraph 80 of the First Amended Complaint.

81. On August 14, 2007, Plaintiffs filed a stipulation to dismiss the second claim of the First Amended Complaint without prejudice.  In this stipulation, the parties agreed that Defendants are relieved of their obligation to respond to paragraph 81 of the First Amended Complaint.

82. On August 14, 2007, Plaintiffs filed a stipulation to dismiss the second claim of the First Amended Complaint without prejudice.  In this stipulation, the parties agreed that Defendants are relieved of their obligation to respond to paragraph 82 of the First Amended Complaint.

In addition to the foregoing, the Defendants assert the following additional defenses:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' First Amended Complaint is barred at least in part because it fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' First Amended Complaint is barred in whole or in part by the doctrines of estoppel, laches and waiver.

14

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' First Amended Complaint is barred in whole or in part because the damages sustained by Plaintiffs, if any, were actually and proximately caused by the conduct or misconduct of persons other than Defendants.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' First Amended Complaint is barred in whole or in part because the damages sustained by Plaintiffs, if any, were actually and proximately caused by Plaintiffs' own conduct or misconduct.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' First Amended Complaint is barred in whole or in part because the Plaintiffs failed to mitigate damages.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' First Amended Complaint is barred in whole or in part by the doctrine of innocent intent.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for equitable relief are barred because Plaintiffs have an adequate remedy at law.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' First Amended Complaint is barred in whole or in part to the extent that the acts complained of were taken by individuals acting in their capacity as employees of PowerDsine, Ltd.

## NINTH AFFIRMATIVE DEFENSE

Defendants hereby give notice that they intend to rely upon such other and further defenses as may become apparent during the proceedings in this case and reserve their right to do so.

## PRAYER

Wherefore, Defendants pray as follows:

A. The Plaintiffs take nothing by reason of its First Amended Complaint and that judgment be rendered in favor of the Defendants;

B. That Defendants be awarded their costs of suit incurred in defense of this Action, including attorneys' fees; and

C. For such other and further relief that this Court may grant in Defendants' favor.

16

## COUNTERCLAIMS OF AMI SEMICONDUCTOR, INC. AND AMI SEMICONDUCTOR BELGIUM BVBA

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, AMI Semiconductor, Inc. and AMI Semiconductor Belgium BVBA (collectively, the "Counterclaim-Plaintiffs" or "AMIS") hereby assert counterclaims against PowerDsine, Ltd., PowerDsine, Inc. (together, "PowerDsine"), and Microsemi Corporation ("Microsemi" and together with PowerDsine, the "Counterclaim-Defendants"), and allege as follows:

## THE PARTIES

1.    Counterclaim-Plaintiff AMI Semiconductor, Inc. ("AMIS Inc.") is a corporation organized under the laws of Delaware, having its principal place of business located at 2300 Buckskin Road, Pocatello, Idaho.

2.    Counterclaim-Plaintiff AMI Semiconductor Belgium BVBA ("AMIS Belgium") is a corporation organized under the laws of Belgium, having its principal place of business located at Westerring 15, B-9700 Oudenaarde, Belgium.

3.    Upon information and belief, Counterclaim-Defendant PowerDsine, Ltd. is a corporation organized under the laws of Israel, with its principal place of business at 1 Hanagar Street, Hod Hasharon, Israel.

4.    Upon information and belief, Counterclaim-Defendant PowerDsine, Inc. is a wholly-owned subsidiary of PowerDsine, Ltd., and is a corporation organized under the laws of New York, with its principal place of business in Melville, New York.

5.    Upon information and belief, Third-Party Defendant Microsemi Corporation

("Microsemi") is a corporation organized under the laws of Delaware, having its principal place of business at 2381 Morse Avenue, Irvine, California, 92614.

## JURISDICTION AND VENUE

6.    This Court has personal jurisdiction over Counterclaim-Defendant PowerDsine, Inc. because it is a New York corporation and is located in New York.

7.    This Court has personal jurisdiction over Counterclaim-Defendant PowerDsine, Ltd., because it has availed itself of this forum as a Plaintiff in this Action and, on information and belief, it is regularly conducting business in New York.

8.    This Court has personal jurisdiction over Counterclaim-Defendant Microsemi Corporation because, upon information and belief, it maintains an office at 47 Elizabeth Street, Ellicottville, New York, and it distributes products through a number of companies located in New York.

9.    This Court has subject matter jurisdiction over the counterclaim for breach of contract against Counterclaim-Defendant PowerDsine, Ltd., an Israeli corporation, and PowerDsine, Inc., a New York corporation, pursuant to 28 U.S.C. § 1332.

10. This Court has subject matter jurisdiction over the counterclaims for trade defamation and tortious interference with prospective business relations against Counterclaim-Defendants PowerDsine, Ltd., PowerDsine, Inc. and Microsemi Corporation pursuant to 28 U.S.C. §§1332 and 1367, as these claims derive from a common nucleus of operative fact as the Plaintiffs' and Counterclaim-Plaintiffs' respective claims for breach of contract.

11. To the extent that venue is proper in the Southern District of New York for Plaintiffs' claim against Defendants pursuant to 28 U.S.C. § 1391, it also is proper for hearing the counterclaims in this forum.

## FACTUAL BACKGROUND

### AMIS designs and manufactures integrated circuits used in products well-known throughout the world

12. AMIS is a leading company specializing in the design and manufacture of state-of-the-art integrated mixed-signal semiconductor products and digital products, and in providing mixed-signal foundry services.  AMIS employs over 2,500 people worldwide, approximately 950 of whom work in the United States.

13. Mixed-signal semiconductor products incorporate integrated circuits (ICs) that have both analog circuits and digital circuits combined on a single semiconductor die or on the same circuit board.  AMIS offers both mixed-signal and digital Application Specific Integrated Circuits (ASICs) to leading manufacturers in the automotive, medical, industrial, military/aerospace and communication markets.  To design and manufacture mixed-signal semiconductor products, AMIS draws upon three decades of experience in creating and integrating functional circuit blocks that meet specific customer needs.

14. Among other areas, AMIS has particular expertise in providing solutions for applications that combine mixed-signal technology with high-voltage functionality.  By incorporating mixed signal capability with high voltage circuitry, AMIS can provide products suitable for automotive, industrial and computer peripheral applications such as sensor interfaces, transceivers and actuators, and motor drivers.

19

15. In addition to its design capabilities, AMIS is also a supplier to many other electronics companies as a semiconductor foundry. A foundry, or fabrication plant ("fab"), is a factory that manufactures ICs according to specifications supplied by customers. Fabrication of a semiconductor chip is a multiple-step sequence of photographic and chemical processing steps during which electronic circuits are gradually created on a wafer made of pure semiconducting material. A fabrication facility prepares the wafers and then forms the chip via various processing steps, followed by extensive testing and ultimately, packaging.

### *AMIS's discussions with PowerDsine about a potential business relationship*

16. In early 2004, AMIS began having discussions with PowerDsine about becoming a second-source supplier to PowerDsine.

17. On information and belief, at the time in 2004 that the parties began having discussions, PowerDsine did not have the capability sufficient to design, develop, or manufacture integrated circuit hardware for its products. As stated in the Prospectus dated June 9, 2004 that it filed with the Securities and Exchange Commission, PowerDsine had been relying on single source suppliers for the microcontrollers and power supplies that it incorporated into its products. At that time, PowerDsine obtained the integrated circuit for its then-current Power-over-Ethernet product from a single company. The company also had arranged to obtain the integrated circuit for its proposed second generation circuit from only a single company. In its Prospectus, PowerDsine remarked that its reliance on single source suppliers could harm its ability to meet demand for its products in a timely manner or within budgets.

18. Pursuant to the discussions in 2004 between AMIS and PowerDsine, on March 4,

2004, the companies executed a Non-Disclosure Agreement.  Among other provisions, the

agreement provided the following:

> Each of the Parties will not, and will direct and cause its
> Representatives not to disclose to any Person: (i) the fact that any
> investigations, discussions or negotiations are taking place between
> the Parties; (ii) that any party hereto has requested Confidential
> Information from Discloser hereunder; or (iii) any of the terms,
> conditions or other facts with respect to the business opportunity
> between the Parties, any such possible relationship related thereto,
> and/or this Agreement, including the status thereof.

The agreement, including this provision, was drafted by PowerDsine.

19. Subsequent to the execution of the 2004 Non-Disclosure Agreement, AMIS

provided comprehensive presentations to PowerDsine concerning AMIS's technology, including

its development methodology, operation capability, and quality control systems.

20. During a meeting in 2004 between AMIS and PowerDsine, representatives of

PowerDsine indicated that PowerDsine desired for AMIS to teach the company the technology

and processes associated with integrated circuit design.  In response, AMIS indicated that it

would not be able to accommodate this request.

21. In October, 2004, AMIS learned that PowerDsine decided not to enter into a

second-source contract with AMIS because PowerDsine desired to work with a company that

would also provide teaching of integrated circuit design.

22. In June, 2005, PowerDsine expressed an interest to consider AMIS as a supplier

of integrated circuits for a Power-over-Ethernet Power Sourcing Equipment product.

23. So that it could prepare an accurate quotation to PowerDsine to be retained as a

supplier, in accordance with standard procedures in the industry, AMIS requested a document

specifying PowerDsine's requirements for the integrated circuit.

24. In response, PowerDsine requested that AMIS execute an amendment to the 2004 Non-Disclosure Agreement to prohibit AMIS from developing or marketing a Power Sourcing Equipment Application Specific Standard Product for any company who may compete with PowerDsine. AMIS, however, refused to sign any agreement that would prohibit the company from developing or marketing integrated circuit products that are not based upon confidential information from PowerDsine.

25. On July 10, 2005 and August 29, 2005, representatives of PowerDsine and AMIS, respectively, executed an Amendment to the Non-Disclosure Agreement executed in 2004. The 2005 Amended Agreement provided a provision stating:

> AMIS agrees not to develop and market a Power Sourcing
> Equipment Application Specific Standard Product for the power
> over Ethernet market based on the Confidential Information
> received from PowerDsine.

26. On several occasions after the 2005 Amended Agreement was executed, PowerDsine indicated its intention to send to AMIS its specification of requirements for the integrated circuit for the Power Source Equipment product, but did not do so.

27. To this date, PowerDsine has never provided the Power Source Equipment specification to AMIS. Accordingly, AMIS did not prepare a quotation to PowerDsine to be retained as a supplier for the project.

28. Because AMIS did not prepare a quotation to PowerDsine, the parties never executed a development agreement or a work order. Accordingly, AMIS never performed a pre-study or performed any technical development or design for or with PowerDsine for a Power

over Ethernet Power Sourcing Equipment integrated circuit.  Likewise, PowerDsine never

performed any analysis, technical development or design for AMIS.  PowerDsine never provided

any algorithms, software, firmware or other code related to an integrated circuit for Power over

Ethernet Power Sourcing Equipment.  Neither company ever provided any compensation to the

other.

### AMIS and Broadcom Issue Press Releases in May 2007 Announcing Development of Power over Ethernet Power Sourcing Equipment Controllers

29. On May 22, 2007, Broadcom Corporation ("Broadcom") issued a press release

announcing two Broadcom products that perform as Power over Ethernet Power Sourcing

Equipment controllers.  In Broadcom's press release, it stated that the two products "are each

manufactured in a robust, high voltage silicon process technology from Broadcom's technology

partner AMI Semiconductor (AMIS), which provides customers in the automotive, medical,

industrial, military/aerospace and communications markets with optimal high voltage process

semiconductor solutions."  The press release additionally announced that the products are

immediately available for shipment.

30. On the same date, AMIS issued a press release announcing that it had been

selected by Broadcom Corporation "as a design and technology partner for two new highly-

integrated power sourcing equipment (PSE) controllers for use in Broadcom's Power over

Ethernet (PoE) products."  The press release continued that "AMIS was selected to work with

Broadcom on the BCM59101 and BCM59103 PSE controllers based on its recognized leadership

and expertise in providing high-quality, robust silicon products for use in complex, high-voltage

applications."

***PowerDsine Publicly Files a Complaint In This Court That Mischaracterizes The
Parties' Non-Disclosure Agreement***

31. On June 25, 2007, without first providing any contact to AMIS, PowerDsine Ltd.

and PowerDsine, Inc. filed a Complaint in this Court alleging that AMIS breached a contract

with PowerDsine.

32. In paragraphs 22 through 24 the Complaint, PowerDsine alleged that AMIS

agreed that it would not compete with PowerDsine in the Power over Ethernet field relating to

products that are integrated into network switching equipment.  In particular, PowerDsine's

Complaint states as follows:

> 22.  PowerDsine decided that because of the sensitive nature of
> such confidential information, it would disclose such information
> only if AMIS would agree not to compete with PowerDsine in the
> PoE field relating to products that are integrated into network
> switching equipment.
>
> 23.  In order to receive such information, AMIS agreed not to
> compete with PowerDsine in the foregoing segment of the PoE
> market.
>
> 24.  As a result of AMIS's agreement not to compete, PowerDsine
> disclosed to AMIS PowerDsine's confidential and proprietary
> information, including the unique design specifications and
> features of PoE integrated circuits designed and developed by
> PowerDsine, as well as valuable confidential information about
> PoE technology which were developed by PowerDsine over years
> of research and development efforts.

33. AMIS never agreed that it would not compete with PowerDsine in the Power-

over-Ethernet market.

34. AMIS did not receive from PowerDsine unique design specifications and features

24

of PoE integrated circuits as a result of an agreement not to compete.

***PowerDsine, Ltd., PowerDsine, Inc. and Microsemi Corporation Issue a Press Release Announcing the Filing of a Complaint Against AMIS, and Contact Investment Analysts and AMIS's Customers and Prospective Customers***

35. On the same day that PowerDsine Ltd. and PowerDsine, Inc. filed its Complaint in this Court, Microsemi Corporation issued a press release announcing that its wholly owned subsidiary, PowerDsine Ltd., filed a complaint against AMIS to request "permanent injunctions enjoining AMIS from, inter alia, engaging in any manufacturing, sale or assembly arrangement with Broadcom (Nasdaq:BRCM) and any other seller or supplier of PoE products."

36. Microsemi's press release additionally quotes Steven G. Litchfield, Microsemi Executive Vice President and President of the Analog Mixed Signal Group, as stating that "we were forced into this situation in order to protect our rights."

37. Upon information and belief, representatives of Microsemi, PowerDsine, Ltd. and PowerDsine, Inc. have contacted investment analysts and misstated that AMIS has been manufacturing products for PowerDsine, Ltd. and accused AMIS of violating a non-compete agreement with PowerDsine, Ltd.

38. Upon information and belief, representatives of Microsemi, PowerDsine, Ltd. and PowerDsine Inc. have contacted customers and potential customers of AMIS and misstated that AMIS has been manufacturing products for PowerDsine Ltd. and accused AMIS as violating a non-compete agreement with PowerDsine Ltd.

39. Upon information and belief, representatives of Microsemi, PowerDsine Ltd and

25

PowerDsine Inc. have provided copies of the Complaint filed in this Court on June 25, 2007 to analysts, customers and potential customers of AMIS.

### *PowerDsine Corrects its Intentional Misstatements in an Amended Complaint After Publicizing and Distributing the Original Complaint*

40. PowerDsine did not serve the Complaint that it publicly filed in this Court on June 25, 2007, but, and on information and belief, it provided the Complaint to AMIS's customers, potential customers, and investment analysts.

41. Then, after having already publicized and distributed the original Complaint containing the mischaracterization of the parties' relationship, PowerDsine filed a First Amended Complaint on July 19, 2007, served upon AMIS, Inc. on July 20, 2007, in which PowerDsine added the following language to its allegation:

> 34. In order to receive such information, AMIS agreed not to compete with PowerDsine in the foregoing segment of the PoE market <u>based on confidential information provided by PowerDsine</u>.

(Emphasis added.)

42. Upon information and belief, Counterclaim-Defendants have not publicly retracted the mischaracterization or otherwise notified AMIS's customers, potential customers, and investment analysts of its mischaracterization.

43. Upon information and belief, PowerDsine's mischaracterization of the parties' agreement in the originally-filed Complaint was intentional and motivated by a desire to harm AMIS's goodwill and reputation and interfere with AMIS's business relationships with its customers and potential customers, as well as to obtain unfair business advantage for both PowerDsine and Microsemi.

## FIRST COUNTERCLAIM
## BREACH OF CONTRACT

**(By AMI Semiconductor Inc. and AMI Semiconductor Belgium BVBA Against PowerDsine Ltd. and PowerDsine, Inc.)**

44. Counterclaim-Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

45. PowerDsine, Ltd. and PowerDsine, Inc. executed an agreement with AMI Semiconductor Inc. and AMI Semiconductor Belgium BVBA by which it agreed not to disclose the existence of its relationship, communications, and agreements with AMIS.

46. PowerDsine, Ltd. and PowerDsine, Inc. breached its agreement with AMIS by contacting AMIS's customers, potential customers, and investment analysts and by mischaracterizing the parties' relationship, communications, and agreements.

47. As a result of PowerDsine, Ltd. and PowerDsine, Inc.'s breach, AMIS has suffered and will continue to suffer damages.

## SECOND COUNTERCLAIM
## BUSINESS DEFAMATION

**(By AMI Semiconductor Inc. and AMI Semiconductor Belgium BVBA Against All Counterclaim-Defendants)**

48. Counterclaim-Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

27

49. By their conduct as alleged above, Counterclaim-Defendants have communicated false and defamatory statements to third parties of and concerning AMIS and its business.

50. These false and defamatory statements have injured the goodwill associated with AMIS, prejudiced AMIS in the conduct of its business and deterred others from dealing with AMIS and its business.

## THIRD COUNTERCLAIM
## INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
### (By AMI Semiconductor Inc. and AMI Semiconductor Belgium BVBA Against All Counterclaim-Defendants)

51. Counterclaim-Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

52. AMIS has entered into business relationships and contemplated contracts of economic benefit with third parties, including relationships with customers, prospective customers, analysts, distributors, retailers, joint development partners, and others.

53. Counterclaim-Defendants knew of these business relationships and contemplated contracts of economic benefit.

54. By their conduct as alleged above, Counterclaim-Defendants have intentionally and improperly interfered with and continue to interfere with AMIS's business relationships and contemplated contracts of economic benefit.

55. AMIS has suffered damages, including loss of advantage, directly as a result of the conduct of the Counterclaim-Defendants, in an amount to be proved at trial.

28

56. Counterclaim-Defendants' acts of interference with AMIS's prospective business relationships have proximately caused AMIS to suffer irreparable harm and injury, and unless enjoined by this Court, will continue to cause AMIS to suffer irreparable harm and injury.  AMIS is therefore entitled to a permanent injunction against Counterclaim-Defendants' acts of interference with AMIS's business relationships and prospective business relationships.


## PRAYER

Wherefore Counterclaim-Plaintiffs pray as follows:

A.  That a permanent injunction be entered against Counterclaim-Defendants enjoining them and their agents, servants and employees and all persons acting under, in concert with, or for them from making, disseminating, or causing to be made or disseminated before the public any statement that is untrue, misleading or defamatory, and that is known, or by the exercise of reasonable care should be known, to be untrue, misleading, or defamatory;

B.  That a permanent injunction be entered against Counterclaim-Defendants PowerDsine, Ltd. and PowerDsine, Inc. from further breaching their agreement with AMIS;

C.  That judgment be entered in AMIS's favor against Counterclaim-Defendants, jointly and severally;

D.  That the Court award AMIS all its actual damages caused by Counterclaim-Defendants' wrongful conduct as complained of herein, as to be proven at trial, together with multiple damages where appropriate;

29

E.  That the Court award to AMIS its costs of suit incurred herein, including its attorneys' fees, as well as interest; and

F.  That the Court award to AMIS such other relief as the Court deems proper.

Dated: August 17, 2007
       New York, New York

RICHARDS KIBBE & ORBE LLP

By:  /s/ Brian Fraser
       Brian S. Fraser
       Jon Connolly

One World Financial Center
New York, NY 10281-1003
(212) 530-1820

PERKINS COIE LLP

Michael A. Oblon, *Admitted Pro Hac Vice*
Donald J. Friedman, *Admitted Pro Hac Vice*
James M. Denaro, *Admitted Pro Hac Vice*

607 Fourteenth Street, N.W.
Washington, DC 20005-2003
(202) 434-1607

*Attorneys for Defendants and
Counterclaim-Plaintiffs*

AMI Semiconductor, Inc. and
AMI Semiconductor Belgium BVBA