UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

POWERDSINE, INC. and POWERDSINE
LTD.,

           **Plaintiffs,**

    - against -

AMI SEMICONDUCTOR, INC. and AMI
SEMICONDUCTOR BELGIUM BVBA,

           **Defendants.**

MICROSEMI CORPORATION,

           **Third-Party Defendant.**

-------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/18/08

**OPINION AND ORDER**

**07 Civ. 6014 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.     INTRODUCTION

PowerDsine, Inc. and PowerDsine, Ltd. (collectively "PowerDsine"), a designer of integrated circuits used in Power-over-Ethernet ("PoE") products, bring the instant suit against AMI Semiconductor, Inc. and AMI Semiconductor Belgium Bvba (collectively "AMIS"), a manufacturer of integrated circuits, alleging breach of contract and tortious interference with contract.  This lawsuit addresses competition within the burgeoning market for PoE hardware and the

fallout from an abortive partnership between PowerDsine and AMIS.

In its answer to PowerDsine's complaint, AMIS brings counterclaims against PowerDsine and its parent company, Microsemi Corporation (collectively "counter-defendants"). PowerDsine and Microsemi have moved for summary judgment on all counterclaims. For the reasons stated below, counter-defendants' motion for summary judgement is granted in full.

## II.   BACKGROUND

### A.   The Nature of the Dispute

PowerDsine is a designer of hardware used in PoE products.[1] PowerDsine, Inc. is a New York corporation,[2] and its parent-company PowerDsine, Ltd. is based in Israel.[3] PowerDsine is a wholly-owned subsidiary of Microsemi, a California corporation.[4] PoE technology allows the transfer of electrical power along with data streams over standard data network cables,

---

[1]    *See* Plaintiffs' Rule 56.1 Statement of Undisputed Facts ("Pl. 56.1") ¶ 1.

[2]    *See* Undated Letter from David Goren, PowerDsine General Counsel, to Fabian Battaglia, Microsemi Corporation, Ex. 14 to 10/7/08 Declaration of Dennis C. Hopkins, Plaintiffs' attorney ("Hopkins Decl.") (indicating headquarters on letterhead).

[3]    *See* 3/4/04 Non-Disclosure Agreement ("NDA"), Ex. 7 to Hopkins Decl.

[4]    *See* Pl. 56.1 ¶ 2.

obviating the need for separate power and data wires.[5]  One component of

PowerDsine's work is the development of integrated circuits used in PoE

equipment.[6]  While PowerDsine determines the specifications and functionality of

the chips it needs, it does not manufacture its own integrated circuits ("ICs").[7]

AMIS is a designer and manufacturer of integrated circuits, a key

component of all computer hardware.[8]  AMI Semiconductor Inc. is based in

Idaho,[9] and its subsidiary AMI Semiconductor Belgium Bvba is (unsurprisingly)

Belgian.[10]  Although AMIS does not focus exclusively on PoE technology, it

designs a variety of application-specific integrated circuits ("ASICs"), including

mixed signal analog/digital chips that can be used in PoE hardware.[11]  AMIS

---

[5]      *See id.* ¶ 1 n.1; Response to Rule 56.1 Statement of Material Facts and Counter Statement of Additional Facts ("Def. 56.1") ¶ 46. *See also* Noah Shachtman, *No Outlet?  Don't Worry, an Ethernet Cable May Do*, N.Y. Times, Mar. 18, 2004 (describing the workings and growth potential of PoE technology).

[6]      *See* Pl. 56.1 ¶ 5.

[7]      *See* Amended Complaint ("Am. Complaint") ¶ 28; Def. 56.1 ¶ 5.

[8]      *See* Pl. 56.1 ¶ 4; Def. 56.1 ¶ 4.

[9]      *See* 5/22/07 AMIS Press Release, Ex. 3 to Hopkins Decl.

[10]      *See* NDA.  AMIS is now owned by ON Semiconductor, which is not a party to this litigation. *See ON Semiconductor Agrees to Buy AMIS*, Wall St. J., Dec. 14, 2007.

[11]      *See* Def. 56.1 ¶¶ 41-47. *See also* Pl. 56.1 ¶ 5.

currently participates in the PoE market through a partnership with Broadcom, a direct competitor of PowerDsine.[12]

PowerDsine's complaint alleges that it provided AMIS with "unique design specifications and features of PoE integrated circuits . . . as well as valuable confidential information about PoE technology" under the protection of a non-disclosure agreement ("NDA").[13] After AMIS received that information directly, it allegedly hired Sharon Dagan, a former PowerDsine employee, despite knowing of the non-competition clause in his contract with PowerDsine.[14] In addition, Broadcom allegedly hired Shimon Elkayam, the PowerDsine engineer who had been PowerDsine's liaison with AMIS, despite knowing of a similar agreement not to complete.[15] AMIS then allegedly used information obtained directly from PowerDsine, as well as the expertise of Dagan and Elkayam, to develop PoE ASICs in partnership with Broadcom.[16]

---

[12]   *See* Pl. 56.1 ¶¶ 5, 33; Def. 56.1 ¶¶ 5, 33, 47-60.

[13]   Am. Complaint ¶ 35.

[14]   *See id.* ¶¶ 52, 58-59.

[15]   *See id.* ¶¶ 36, 42-51.

[16]   *See id.* ¶¶ 65-66.

Along with its answer to PowerDsine's complaint, AMIS asserted counterclaims for breach of contract, business defamation, and tortious interference with prospective business relations.[17] Each of these claims stems from communications related to this lawsuit.[18] In its response to the instant motion for summary judgment, however, AMIS "elected not to pursue its . . . counterclaims for breach of contract and interference with prospective business relations."[19]

Moreover, in its submissions opposing summary judgment, AMIS substantially narrowed the breadth of its business defamation claim. AMIS's statement of counterclaims lists the public filing of PowerDsine's complaint, distribution of the complaint to business analysts and customers of AMIS, and issuance of a press release announcing the lawsuit as the basis for its defamation claims.[20] AMIS no longer includes these statements in its elaboration of allegedly

---

[17] *See* Counterclaims of AMI Semiconductor, Inc. and AMI Semiconductor Belgium Bvba ("Counterclaims") ¶¶ 44-56.

[18] *See id.* ¶¶ 29-43.

[19] Defendants-Counterclaim Plaintiffs AMI Semiconductor, Inc. and AMI Semiconductor Belgium Bvba's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment on AMIS's Business Defamation Counterclaim ("Def. Mem.") at 2 n.1.

[20] *See* Counterclaims ¶¶ 31-36, 39.

defamatory statements in opposition to counter-defendants' motion for summary judgment.

## B.     The Allegedly Defamatory Statements

AMIS now bases its business defamation claim on three specific statements.[21]  The first is an October 15, 2007 e-mail from Daniel Feldman, Senior Product Line Manager for PowerDsine's PoE ICs, to Michael Zimmerman, an employee of Marvell Technology Group, Ltd., a producer of storage, communications and consumer semiconductor products.[22]  On October 12, 2007, Zimmerman sent Feldman an agenda for a forthcoming meeting between Marvell and Microsemi.  Agenda item two stated, "Legal violation with [Broadcom], inform (written letter) legal teams of top [North American] suppliers – Microsemi."[23]  In response, Feldman thanked Zimmerman for the agenda and added comments.  Specifically, he added to agenda item two,

> See attached the presentation we show to customers in regards to the PowerDsine v. AMIS lawsuit (note that

---

[21]     *See* Def. Mem. at 13-14.

[22]     *See id.* at 13. *See also* Marvell, *Marvell: Products Overview*, http://www.marvell.com/products/index.jsp (describing Marvell's business).

[23]     10/15/07 e-mail from Daniel Feldman, PowerDsine Senior Product Manager, to Michael Zimmerman, Marvell employee ("Marvell e-mail"), Ex. 11 to Hopkins Decl.

> PowerDsine Ltd., a wholly owned subsidiary of Microsemi
> started the litigation), as well as the summons and the
> complaint.  I will work with my legal team to issue a
> formal letter as well.[24]

Zimmerman followed up on Feldman's comment by asking, "This is against AMIS

not [Broadcom], right?  Today, [Broadcom] is buying what from AMIS?

[Intellectual Property]?  The design?  [Broadcom] manufacture themselves the die,

packaging, etc?"[25]  Feldman answered, "This is against AMIS.  AMIS 'did the

design' (stolen from PowerDsine) and manufactures the ICs in their I3T80 process

. . . .  I am not sure who does the packaging, but a good guess is a 3rd party

managed by AMIS."[26]

The second statement is a June 27, 2007 conversation between

Feldman and Anoop Vetteth, an employee of Cisco Systems, Inc., a supplier of

networking equipment and network management for the Internet.[27]  Feldman

recounted the conversation in an e-mail to a number of Microsemi employees, the

relevant portion of which states,

---

[24]     *Id.*

[25]     *Id.*

[26]     *Id.* (ellipses in original).

[27]     *See* Def. Mem. at 13-14.  *See also* Cisco, *News@Cisco -> Corporate
Overview*, http://newsroom.cisco.com/dlls/corpinfo/corporate_overview.html
(describing Cisco's business).

> I had today a conversation with Anoop, who is in India. He wanted to get more details about the suit between us an[d] AMI. I told him that we shopped for fabs normally, and that we gave a spec to AMIS, who developed a chip based on it and gave it to Broadcom as-is. Anoop told me that this is exactly what AMIS told to him, and that he found [it] very strange that a company would steal something and go around bragging about it. Anoop asked for David Goren's contact info because he wants to get a copy of the complete summons of the case.[28]

The third statement occurred in a February 7, 2008 discussion between Daniel Feldman and Dov Frishberg, plaintiffs' damages expert.[29] Frishberg's notes of the conversation state,

> The guy (going to France) chief engineer, next generation IC, write specs & give to diff. FABS, the FABS we approached were Freeskill, AMIS, Atmel . . . . Turnkey model, need to give <u>detailed</u> specification to these. All done under NDA. Then middle '05 Broadcom got to this guy. They hired him. He's in contact with AMIS,

---

[28] 6/27/08 e-mail from Daniel Feldman to Microsemi employees ("Cisco e-mail"), Ex. 11 to Hopkins Decl. "Fabs" denotes a semiconductor fabrication plant that will manufacture a chip based on a third party's specifications. *See Semiconductor Fabrication Plant*, Wikipedia, http://en.wikipedia.org/wiki/Fab_(semiconductors). A "spec" is the formal product specification for an IC. *See Specification (Technical Standard)*, Wikipedia, http://en.wikipedia.org/wiki/Specification. David Goren is the General Counsel of PowerDsine. *See* Am. Complaint.

[29] *See* Def. Mem. at 14. *See also* Joint Pretrial Order at 16 (identifying plaintiffs' damages expert).

continued his role as Chief architect of Broadcom's chip that they stole from PowerDsine.[30]

Finally, AMIS states that it infers from Feldman's deposition testimony the existence of additional, currently unknown defamatory statements. At an August 8, 2008 deposition, Joseph Mais, attorney for AMIS, asked Feldman, "Isn't it true that you made oral statements to customers to the same effect, namely, that AMI stole PowerDsine's specification and used it to design the Broadcom chip?"[31]  Feldman answered,

> I am not sure that I used the term "stole" to customers. But you – what would be more appropriate would be that AMI had an NDA with Microsemi, AMI received specifications of a Microsemi IC, and the – and apparently copied these specifications violating the terms of the NDA and producing a chip based on these specifications.[32]

AMIS has not identified any specific, purportedly defamatory statements by Feldman along the lines of this testimony.

---

[30]   2/7/08 Notes of Dov Frishberg, plaintiffs' damages expert, at 5, Ex. 30 to 10/24/08 Declaration of Joseph E. Mais, defendants' attorney.  A turnkey model is a system supplied in a state that is ready to turn on and operate.  *See Turnkey*, Wiktionary, http://en.wiktionary.org/wiki/turnkey.  The engineer reference in these notes is likely Shimon Elkayam.  *See* Am. Complaint ¶ 41.

[31]   8/6/08 Deposition of Daniel Feldman at 249, Ex. 10 to Hopkins Decl.

[32]   *Id.* at 249-250.

## III.   CHOICE OF LAW

Prior to establishing the subject-specific law applicable to this case, this Court must apply the applicable choice of law rules. As a federal court sitting in diversity, this Court utilizes the choice of law regime of the state in which it is located.[33] In New York, "'the relevant analytical approach to choice of law in tort actions' is the 'interest analysis' . . . 'the law of the jurisdiction having the greatest interest in the litigation will be applied.'"[34] "[T]he first question to resolve . . . is whether there is an actual conflict of laws."[35] In a defamation action, if an actual conflict exists, the court must look to the law of the location of the alleged tort.[36]

The defamation laws of New York, California, and Idaho – the U.S. jurisdictions with possible interests in this litigation – conflict in several critical

---

[33]   See Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 147 (2d Cir. 2008) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)).

[34]   White Plains Coat & Apron Co. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006) (quoting Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 n.5 (2d Cir. 1997)).

[35]   Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998) (citing Matter of Allstate Ins. Co. & Stolarz, 81 N.Y.2d 219, 223 (1993)).

[36]   See AroChem Int'l, Inc. v. Buirkle, 968 F.2d 266, 270 (2d Cir. 1992) (holding that law concerning whether particular speech is defamatory "is conduct-regulating," and therefore generally "the law of the locus jurisdiction applies") (citing  Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189 (1985)).

ways.[37]  For example, the protections afforded to opinion are substantially greater

under New York law than under the law of California.[38]  On the other hand, the

protections afforded to statements related to litigation are broader in California

than they are in Idaho.[39]  Therefore a true conflict exists, and the law of the

location of the tort applies.

---

[37]     *See Condit v. Dunne*, 317 F. Supp. 2d 344, 352 (S.D.N.Y. 2004)
(noting the general conflict between California and New York defamation law).
*See generally Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (holding that
states may define their own defamation law so long as they stay within limits set
by the First Amendment).  The libel laws of Israel and Belgium – other
jurisdictions with possible interests in this matter – clearly diverge from U.S. law,
as those countries lack the stringent speech protections enshrined in the First
Amendment.  *See* Jeremy Maltby, Note, *Juggling Comity and Self-Government:
The Enforcement of Foreign Libel Judgments*, 94 Colum. L. Rev. 1978 (1994)
(noting unique protections afforded to speech under U.S. law).

[38]     *Compare Maidman v. Jewish Publ'ns Inc.*, 54 Cal. 2d 643, 649
(1960) ("Comments, opinions and criticisms may be defamatory even though
based upon true or privileged statements of fact.") *with Celle v. Filipino Reporter
Enter.*, 209 F.3d 163, 178 (2d Cir. 2000) (noting that New York law "provides
absolute protection of opinions").  *See also Wiemer v. Rankin*, 790 P.2d 347, 353
(Idaho 1990) (finding a "mark of defamatory opinion").

[39]     *Compare Malmin v. Engler*, 864 P.2d 179, 182 (Idaho App. 1993)
(limiting the litigation privilege to communications involving the court), *with
eCash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1082 (C.D. Cal. 2000)
("[A] communication merely informing a third party of the pendency of this
litigation must clearly fall within the privilege.").  *See also Rubin v. Green*, 4 Cal.
4th 1187, 1194 (1993) (noting the "expansive reach" given to the litigation
privilege in California courts).

Courts have considered numerous factors when determining the "location" of tortious speech.[40]  However, when faced with questions concerning privilege and opinion, New York choice of law rules place particular weight on the location of publication.[41]  PowerDsine employees who issued the statements and most of their intended recipients were located in California.[42]  This overcomes both the interests of Idaho and Belgium in protecting their domiciliaries, as well as New York's interest in regulating speech arising from litigation brought within its borders.[43]  The balance of interests favors the application of California law to the remainder of this motion.

## IV.   APPLICABLE LAW

### A.   Summary Judgment

---

[40]     *See Palmisano v. News Syndicate Co.*, 130 F. Supp. 17, 19 n.2 (S.D.N.Y. 1955) (listing nine potential factors).

[41]     *See AroChem*, 968 F.2d at 271.

[42]     *See* 6/25/07 Microsemi Press Release (noting the origin of the allegedly defamatory statements to be Irvine, California), Ex. 1 to Hopkins Decl.; Pl. 56.1 ¶ 37 n.7 (establishing that recipient Cisco Systems is based in San Jose, California); Marvel, *Marvell: Contact Us*, http://www.marvell.com/contact/index.jsp (noting that Marvell is headquartered in Santa Clara, California). *See also* Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment at 6 (asserting that plaintiffs' employees involved in the allegedly defamatory statements were based in California).

[43]     *See AroChem*, 968 F.2d at 271.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[44]  An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[45]  A fact is material when it "'might affect the outcome of the suit under the governing law.'"[46]  "It is the movant's burden to show that no genuine factual dispute exists."[47]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.  "Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

---

[44]     Fed. R. Civ. P. 56(c).

[45]     *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[46]     *Ricci v. DeStefano*, 530 F.3d 88, 109 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

[47]     *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

will bear the burden of proof at trial.'"[48]  To do so, the non-moving party must do

more than show that there is "'some  metaphysical doubt as to the material

facts,'"[49] and it "'may not rely on conclusory allegations or unsubstantiated

speculation.'"[50]  However, "'all that is required [from a non-moving party] is that

sufficient evidence supporting the claimed factual dispute be shown to require a

jury or judge to resolve the parties' differing versions of the truth at trial.'"[51]

In determining whether a genuine issue of material fact exists, the

court must construe the evidence in the light most favorable to the non-moving

party and draw all justifiable inferences in that party's favor.[52]  However, "[i]t is a

---

[48]    *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  *Accord In re September 11
Litig.*, No. 21 MC 97, 2007 WL 2332514, at *4 (S.D.N.Y. Aug. 15, 2007) ("Where
the nonmoving party bears the burden of proof at trial, the burden on the moving
party may be discharged by showing – that is, pointing out to the district court –
that there is an absence of evidence to support the nonmoving party's case.")
(quotation omitted).

[49]    *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting
*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[50]    *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)
(quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[51]    *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199,
206 (2d Cir. 2006) (quoting *Anderson*, 477 U.S. at 248-49).

[52]    *See Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008)
(quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir.2005)).

settled rule that '[c]redibility assessments, choices between conflicting versions of

the events, and the weighing of evidence are matters for the jury, not for the court

on a motion for summary judgment.'"[53]  Summary judgment is therefore "only

appropriate when there is no genuine issue as to any material fact, making

judgment appropriate as a matter of law."[54]

Under California law, "'[s]ummary judgment is a favored remedy in

defamation and invasion-of-privacy cases due to the chilling effect of protracted

litigation on First Amendment rights.'"[55]

> "[T]he courts impose more stringent burdens on one who
> opposes the motion and require a showing of high
> probability that the plaintiff will ultimately prevail in the
> case.  In the absence of such showing, the courts are
> inclined to grant the motion and do not permit the case to
> proceed beyond the summary judgment stage."[56]

## B.     Business Defamation

---

[53]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

[54]     *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486-87 (2d Cir. 2006)).

[55]     *Alszeh v. Home Box Office*, 80 Cal. Rptr. 2d 16, 17 (Ct. App. 1998) (quoting *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491, 1498 (Ct. App. 1995)).

[56]     *Couch*, 33 Cal. App. 4th at 1498-99 (Ct. App. 1995) (quoting *Sipple v. Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1046 (Ct. App. 1984)).

Under California law, libel requires proof of

a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.[57]

Similarly, business slander requires proof of

a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which . . . [t]ends directly to injure [a person] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits.[58]

In both cases, "[w]hether a statement is defamatory can be reached as a matter of law."[59] Although the plaintiff bears the burden of proof with regard to publication

---

[57]    Cal. Civ. Code § 45.

[58]    *Id.* § 46.

[59]    *Cargill Inc. v. Progressive Dairy Solutions, Inc.*, No. CV-F-07-0349, 2008 WL 2235354, at *11 (E.D. Cal. May 29, 2008) (citing *Okun v. Superior Court*, 29 Cal. 3d 442, 449-50 (1980)).

16

and injury,[60] the defendant bears the burden of proof to establish that particular

communications were privileged[61] or truthful.[62]

In order for a court to determine whether a statement implies a

defamatory assertion of fact, the court must be aware of the context in which it

was made. California law applies a four-part "totality of the circumstances" test to

distinguish between fact and opinion. A court must look to "the language of the

statement" as well as "the context in which the statement was made," which

includes "the facts surrounding the publication" and "the knowledge and

understanding of the audience to whom the publication was directed."[63]

### C.    The Litigation Privilege

Under section 47(b)(2) of the California Civil Code, "[a] privileged

publication or broadcast is one made in any judicial proceeding."[64]  "[T]he

---

[60]    *See Lundquist v. Reusser*, 7 Cal. 4th 1193, 1200-01 & n.5 (1994).

[61]    *See Taus v. Loftus*, 40 Cal. 4th 683, 721 (2007) (citing *Lundquist*, 7 Cal. 4th at 1202).

[62]    *See Lundquist*, 7 Cal. 4th at 1200-01 & n.5.

[63]    *Baker v. L.A. Herald Exam'r*, 42 Cal. 3d 254, 261 (1986).    The Supreme Court's 1990 decision in "*Milkovich* [*v. Lorain Journal Co.*] did not substantially change these principles." *Moyer v. Amador Valley J. Union High School Dist.*, 275 Cal. Rptr. 494, 497 (Ct. App. 1990).

[64]    Cal. Civ. Code § 47(b)(2).

privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."[65] "California courts have given the privilege an expansive reach," applying it to communications with merely "'some relation' to judicial proceedings."[66] Thus, "it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved."[67]

"Undergirding the immunity conferred by section 47(b) is the broadly applicable policy of assuring litigants 'the utmost freedom of access to the courts

---

[65]   *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990) (citations omitted).

[66]   *Rubin*, 4 Cal. 4th at 1193 (citations omitted). *Accord Silberg*, 50 Cal. 3d at 211 ("In furtherance of the public policy purposes it is designed to serve, the privilege prescribed by section 47(2) has been given broad application.").

[67]   *Silberg*, 50 Cal. 3d at 212.

to secure and defend their rights . . . ."[68] No exception to the privilege exists "in the interests of justice," even when deliberately deceptive statements are made.[69]

Despite the expansive interpretation of the privilege by the California Supreme Court, other courts applying California law are divided over the application of the privilege to repetition of the allegations in the complaint to interested parties. One line of California appellate decisions has held that "republications to nonparticipants in the action are generally not privileged under section 47(b)."[70] On the other hand, some California appellate courts and federal courts applying California law have held that "communications made in response

---

[68]     *Rubin*, 4 Cal. 4th at 1194 (quoting *Albertson v. Raboff*, 46 Cal. 2d 375, 380 (1956)). *See generally Silberg*, 50 Cal. 3d at 213-15 (outlining several additional public policy justifications for California's broad interpretation of the privilege).

[69]     *Silberg*, 50 Cal. 3d at 213. *Accord Carmichael Lodge No. 2103 v. Leonard*, No. S-07-2665, 2008 WL 1346641, at *5 (E.D. Cal. Apr. 9, 2008) ("[I]f the litigation privilege applies, then the protection provided is absolute, even when a statement is made with malice.") (citing *Kashian v. Harriman*, 120 Cal. Rptr. 2d 576, 592 (Ct. App. 2002)).

[70]     *Susan A. v. County of Sonoma*, 3 Cal. Rptr. 2d 27, 31 (Ct. App. 1991). *Accord Rothman v. Jackson*, 57 Cal. Rptr. 2d 284, 294 (Ct. App. 1996) ("In sum, we hold that the litigation privilege should not be extended to 'litigating in the press.'").

to customer inquiries about" pending litigation[71] or even unprompted notices of pending litigation fall within the privilege.[72]

In addition, there are some statements that are related to pending litigation but nevertheless lie beyond the protection of the privilege. *First*, statements to third parties that extend beyond the scope of the complaint are not protected, even if they relate to an opposing party.[73]  Such statements do not "further [the objects of] the litigation."[74]  *Second*, parties may not use the privilege as cover to engage in active self-help, attempting to achieve the ends of the

---

[71]    *Cargill*, 2008 WL 2235354, at *7 (citing *Franklin v. Dynamic Details, Inc.*, 10 Cal. Rptr. 3d 429 (Ct. App. 2004)).

[72]    *See eCash Techs.*, 127 F. Supp. at 1082.

[73]    *See, e.g.*, *Cargill*, 2008 WL 2235354, at *11-*12 (finding personal accusations against an opposing party's principals not privileged).

[74]    *Maponics, LLC v. Wahl*, No. C-07-5777, 2008 WL 2788282, at *3 (N.D. Cal. July 18, 2008).

20

litigation prior to judicial resolution.[75]  Such statements lack the necessary

"'connection or logical relation to the action.'"[76]

## V.   DISCUSSION

### A.   The Marvell E-mail and the Cisco E-mail

The first statement on which AMIS bases its defamation claim is

Feldman's October 15, 2007 e-mail to Zimmerman, an employee of Marvell

Technology Group, in which Feldman stated, "AMIS 'did the design' (stolen from

PowerDsine) and manufactures the IC in their I3T80 process."[77]  The second is –

at its core – identical.  Feldman recounted to his colleagues that he had told Anoop

Vetteh, an employee of Cisco Systems, that PowerDsine "gave a spec to AMIS,

who developed a chip based on it and gave it to Broadcom as-is."[78]  Divorced from

any context, these statements are bald accusations of industrial espionage.

However, in response to customers' requests for clarification concerning the

---

[75]     *See Carmichael Lodge No. 2103*, 2008 WL 1346641, at *7 ("[T]he litigation privilege exists so that parties do not resort to self-help.") (citing *Rothman*, 49 Cal. App. 4th at 1146). *See also Maponics*, 2008 WL 2788282, at *3; *Meridian Project Systems, Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1223 (E.D. Cal. 2005).

[76]     *Carmichael Lodge No. 2103*, 2008 WL 1346641, at *7 (quoting *Silberg*, 50 Cal. 3d at 212)

[77]     Def. Mem. at 13 (quoting Marvell e-mail).

[78]     *Id.* at 14 (quoting Cisco e-mail).

pending suit between PowerDsine and AMIS, they merely repeat and clarify the allegations of the complaint. Thus for the reasons elaborated below, these statements are protected by the litigation privilege.

Despite the division among courts applying California law, I find that the California Supreme Court's endorsement of a broad litigation privilege supports the U.S. District Court for the Central District of California's conclusion that "a communication merely informing a third party of the pendency of this litigation must clearly fall within the privilege."[79] Similarly, I find that California public policy supports the U.S. District Court for the Eastern District of California's conclusion that "communications made in response to customer inquiries" "fall within the litigation privilege."[80]

In the age of digital communication, it is illogical to protect allegations in a publicly filed complaint but not repetition or explanation of those same allegations outside the courthouse. Allegations of interest to the public or even to a single competitive industry will inevitably reach interested parties,[81] and

---

[79]    *eCash Techs.*, 127 F. Supp. 2d at 1082 (citing *Rubin*, 4 Cal. 4th at 1194).

[80]    *Cargill*, 2008 WL 2235354, at *7.

[81]    *See generally The Smoking Gun*, http://www.thesmokinggun.com (providing a searchable archive of scandalous court filings).

an explanation limited to the scope of the complaint only narrows the potential harm of statements that would be defamatory but for the privilege.

Feldman's statement to Zimmerman responded to questions concerning the identity of the defendant, the alleged relationship between the defendant and another industry participant, and the scope of the alleged unlawful acts. Feldman's claim that AMIS "did the design (stolen from PowerDsine)" merely reiterated the core allegations of the complaint, albeit not in the sensitive language of an attorney or a public relations specialist. This Court need not draw a line between a formal allegation that a company misappropriated confidential information[82] and the simple statement that design specifications were stolen.

Similarly, Feldman's statement to Vetteth was triggered by Vetteth's desire for information about the suit against AMIS.[83] Again the statements that AMIS claims are defamatory – "that [PowerDsine] shopped for fabs normally, and that we gave a spec to AMIS, who developed a chip based on it and gave it to Broadcom as-is" are substantively indistinguishable from the claim in the

---

[82]      *See* Am. Complaint ¶ 75.

[83]      *See* Cisco e-mail ("He wanted to get more details about the suit between us an[d] AMI.").

complaint that AMIS relied on the PowerDsine specification in developing the chip now used in Broadcom.[84]

Thus these two statements merely explain the substance of the complaint in response to a query from a third party and are protected by the litigation privilege. This ruling does not leave AMIS without recourse if – as it alleges – this litigation is a baseless and "calculated campaign to scare customers away from buying Broadcom's PoE" products."[85]  First and foremost, AMIS is free to communicate its view of the litigation to the same industry players and to allow the marketplace of ideas to hold sway until a judicial resolution is reached. Moreover, if a signed complaint is entirely without evidentiary support or a likelihood that evidentiary support will be discovered – merely a vehicle to harass a defendant or otherwise presented for an improper purpose – then a motion for sanctions under Federal Rule of Civil Procedure 11[86] and a post-judgment action

---

[84]    *See* Am. Complaint ¶ 66.

[85]    Def. Mem. at 5.

[86]    *See* Fed. R. Civ. P. 11(b)(1), (3); . *See also Roth v. Jennings*, 489 F.3d 499, 517 (2d Cir. 2007) (noting the application of Rule 11 to a signed complaint).

24

for malicious prosecution[87] are appropriate means by which a defendant may seek recompense.

Summary judgment is granted to counter-defendants with regard to the October 15, 2007 Marvell e-mail and the Cisco e-mail.

## B.     The February 7, 2008 Conversation with Plaintiffs' Expert

AMIS also bases its defamation claim on Feldman's conversation with PowerDsine's expert Dov Frishberg, who noted: "[Elkayam] is in contact with AMIS, continued his role as Chief architect of Broadcom's chip that they stole from PowerDsine."[88]  However, these communications fall squarely within the litigation privilege.  Communications between a party and its damages expert are necessary to develop a valid damages model, a crucial step "to achieve the

---

[87]     *See Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871 (1989) ("[I]n order to establish a cause of action for malicious prosecution . . . a plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in . . . plaintiff's[] favor; (2) was brought without probable cause; and (3) was initiated with malice.") (internal citations omitted). *See also Cargill*, 2008 WL 2235354, at *6 n.8 (noting that malicious prosecution is an exception to the litigation privilege).

[88]     Def. Mem. at 8 n.8 (quoting Notes of Dov Frishberg at 5).

objects of the litigation."[89]  Thus like other forms of witness preparation,[90] the conversation between Feldman and plaintiffs' expert – even if otherwise slanderous – is non-actionable.  Summary judgment is granted to counter-defendants with regard to the conversation between Feldman and Frishberg.

###       C.       Other Potentially Defamatory Statements

Based on Feldman's statement during his deposition that he repeated the core allegations of the complaint to PowerDsine customers, defendants assert that "it can be inferred that he and others on his team" "made similar statements to many other customers that are defamatory per se."[91]  As potentially defamatory statements must be evaluated according to their "nature and full content" as well as "the knowledge and understanding of the audience,"[92] establishment of the mere likelihood that statements were made is insufficient to establish a prima facie defamation claim.  In order to survive summary judgment, a defamation plaintiff

---

[89]     *Silberg*, 50 Cal. 3d at 212 (citations omitted) (holding that communications necessary "to achieve the objects of the litigation" are privileged).

[90]     *See, e.g.*, *Lambert v. Carneghi*, 70 Cal. Rptr. 626, 641 n.8 (Ct. App. 2008) (citing *Gootee v. Lightner*, 274 Cal. Rptr. 697, 700-01 (Ct. App. 1990)).

[91]     Def. Mem. at 14-15.

[92]     *Baker*, 42 Cal. 3d at 261 (citing *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 602-03 (1976)).

must establish the fact of publication, including the content and context of the offending communication.[93] AMIS has failed to meet that burden. Therefore, summary judgment is granted to counter-defendants with regard to additional statements evinced by Feldman's deposition testimony.[94]

---

[93] *Cf.* Robert D. Sack, *Sack on Defamation*, § 2.4.13 ("But even federal courts and jurisdictions in which *in haec verba* pleadings are not required, the defamation must be pleaded with enough specificity to permit the defendant to respond appropriately to the complaint, including the ability to allege that the communication in question was not actionable.") (citing, *inter alia*, *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)).

[94] Even if Feldman made such statements, they would be substantively indistinguishable from the Marvell e-mail and the Cisco e-mail and therefore also protected by the litigation privilege.

## VI.    CONCLUSION

For the foregoing reasons, counter-defendants' motion for summary

judgment is granted in full and all of defendants' counterclaims are dismissed. The

Clerk of the Court is directed to close this motion (Docket No. 34).  A conference

is scheduled for January 7, 2009, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              December 18, 2008

28

**- Appearances -**

## For Plaintiffs and Third-Party Defendant:

Dennis Cecil Hopkins, Esq.
Scott Sonny Balber, Esq.
Walter G. Hanchuk, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5433

## For Plaintiffs:

David Goren, Esq.
PowerDsine Ltd.
290 Broadhollow Road, #305
Melville, New York 11747

## For Defendants:

Bryan S. Banks, Esq.
Tyler R. Bowen, Esq.
Perkins Coie LLP
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 351-8000

Brian S. Fraser, Esq.
Richards Kibbe & Orbe, LLP
701 8th Street, NW
Washington, DC 20001
(202) 530-1800

Donald Jay Friedman, Esq.
James Matthew Denaro, Esq.
Joseph E. Mais, Esq.
Mary Rose Hughes, Esq.
Michael Andrew Oblon, Esq.
Perkins Coie LLP
607 Fourteenth Street, NW
Suite 800
Washington, DC 20005
(202) 434-1605

29